IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CENTA SCHULTZ, and
CHARLES SCHULTZ,
husband and wife,

        Plaintiffs,
vs.                                              CIVIL NO.  08-1182 WJ/GBW

THOMAS BYRNE, M.D.,
DEMING HOSPITAL CORPORATION d/b/a/
MIMBRES MEMORIAL HOSPITAL,
COMMUNITY HEALTH SYSTEMS, INC.,
and COMMUNITY HEALTH SYSTEMS
PROFESSIONAL SERVICES, INC.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on a Stipulated Order for In Camera Review of Defendant Mimbres Memorial Hospital's Credentialing File on Thomas J. Byrne, M.D., filed August 24, 2009.  *Doc. 46*.  Plaintiffs have requested that Defendant Mimbres Memorial Hospital (hereinafter "MMH") produce Dr. Bryne's entire credentialing file.  MMH has produced all but twenty-two pages of documents contained in Dr. Byrne's credentialing file.  It is agreed by the parties that the Court will review the twenty-two pages of documents in camera to determine if they should be produced.

## Overview

The parties agree that whether these documents should be produced is governed by the New Mexico Review Organization Immunity Act, §§ 41-9-1, et seq. ("ROIA"). The pertinent provision of the ROIA states as follows:

> All data and information acquired by a review organization in the exercise of its duties and functions shall be held in confidence and shall not be disclosed to anyone except to the extent necessary to carry out one or more of the purposes of the review organization or in a judicial appeal from the action of a review organization. . . . Information, documents or records otherwise available from original sources shall not be immune from discovery or use in any civil action merely because they were presented during proceedings of a review organization, nor shall any person who testified before a review organization or who is a member of a review organization be prevented from testifying as to matters within his knowledge, but a witness cannot be asked about opinions formed by him as a result of the review organizations hearings.

N.M.S.A. § 41-9-5.  The New Mexico Supreme Court, recognizing the need to balance the legislative function of promoting the health and welfare of society against the right of litigants to obtain relevant and material evidence, has set forth the following burdens on the parties:

> First, the party invoking the statute must "prove that the data or information was generated exclusively for peer review and for no other purpose...."  [In addition,] the party seeking to compel discovery has the "initial burden of proving relevance to the subject matter." . . .  [I]f the court rules that the information is confidential, the party seeking to compel discovery "must then satisfy the trial court that the information constitutes evidence which is critical to the cause of action or defense.  If the trial court determines that the success or failure of a litigant's cause of action or defense would likely turn on the evidence adjudged to fall within the scope of Section 41-9-5, then the trial court shall compel production of such evidence."

2

*Chavez v. Lovelace Sandia Health System*, 189 P.3d 711, 715-16 (N.M. App. 2008) (*quoting Southwest Community Health Services v. Smith*, 755 P 2d. 40, 44-45 (N.M. 1988)).

## Relevance

In Plaintiffs' complaint, Plaintiffs assert that MMH was negligent in granting hospital privileges to Dr. Byrne. Plaintiffs claim that MMH failed to exercise reasonable diligence in obtaining and acting upon information concerning the competence of Dr. Byrne. Plaintiffs further claim that MMH knew or reasonably should have known, based upon information obtained through the credentialing process and/or review organization process, that Dr. Byrne should not have been granted hospital privileges. Having reviewed the documents, the claims made in the lawsuit and the pleadings on this matter, the Court finds that the Plaintiff has met its initial burden of establishing the documents are relevant to Plaintiffs' claims against MMH.

## Exclusivity

MMH asserts that the documents at issue were created exclusively for peer review and no other purpose. MMH attached the Affidavit of Charles Hickis, Chief Quality Officer for MMH. He states that the documents at issue were:

> used by Mimbres Memorial Hospital and the review organizations established by the hospital to monitor and review the performance and qualification of Thomas Byrne, M.D. and determine whether Dr. Byrne's privileges should be limited, suspended or revoked. The data or information contained in documents attached hereto as bates numbers were generated exclusively for peer review and for no other purpose and any opinions contained in these documents were formed exclusively as a result of peer

review deliberations.

*Doc. 50*, Ex. 1. The Court has reviewed the documents and agrees that the majority of documents before the Court were generated exclusively for peer review and no other purpose. Documents marked with bates numbers TB00132, TB00164-TB00175, TB00183, TB00186-TB00187, TB00224 and TB00231 fall into this category.

With respect to the remaining two documents (TB00128-TB00130, TB00196), the Court does not agree that these two letters written by Dr. Byrne were generated *exclusively for peer review and no other purpose*. The letter marked TB00196 is a "Memo to: Credentials Committee." While there is no date on the document, the context indicates that it was written and sent as part of Dr. Byrne's attempt to gain employment at the hospital. While this document was "acquired by a [the hospital's credentialing committee] in the exercise of its duties and functions," it appears that Dr. Byrne generated the memo for two purposes: the committee's peer review and as part of his attempt to get a job. Consequently, the memo was not generated exclusively for peer review and for no other purpose.

The letter marked TB00128-TB00130 is even more problematic. The letter begins with: "I am enclosing this letter of explanation per your application instructions." Thus, it appears that this letter was not specifically directed at the credentialing committee but was attached as an addendum to the application Dr. Byrne submitted to the hospital. While the Court has no doubt that the credentialing committee would use such a letter

4

when making its review of Dr. Byrne, the letter was not generated exclusively for peer review and for no other purpose.

Therefore, the Court finds that for the documents marked TB00128-TB00130 and TB00196, the Defendant has not met its burden of proving "that the data or information was generated exclusively for peer review and for no other purpose."[1] However, in the interest of a complete analysis, the Court will also review those documents, along with the documents marked TB00132, TB00164-TB00175, TB00183, TB00186-TB00187, TB00224 and TB00231, for criticality under *Smith/Chavez*.

## **Criticality**

If a document is relevant but produced exclusively for peer review, the party seeking to compel discovery "must ... satisfy [this] court that the information constitutes evidence which is critical to the cause of action or defense. If [this] court determines that the success or failure of a litigant's cause of action or defense would likely turn on the evidence adjudged to fall within the scope of Section 41-9-5, then [this] court [will] compel production of such evidence." *Chavez*, 189 P.3d at 715-16 (citations omitted). This definition of criticality still leaves much to be desired. It is not clear whether the focus is on the importance of the evidence standing alone or on whether it is possible for a party to obtain the evidence through other means. *See id.* at 721-23 (court noting relative

---

[1] This finding should not be taken as a negative comment on Mr. Hickis' credibility. *See Doc. 50*, Ex. 1. It simply reflects the Court's different conclusion on the legal issue of exclusivity.

importance of evidence and possibility of other means of discovery[2]).

Plaintiffs assert that based upon the cause of action asserted against MMH, Dr. Bryne's entire credential file is critical. Plaintiffs have submitted an Affidavit from Sue King, CPSMS, CPCS, CPHQ, who states she is an "expert in the profession of credentialing by the National Association of Medical Staff Services." *Doc. 51*, Ex. B. Ms. King states that the "entire contents" of a physician's credentialing file are "critical" to establish Plaintiffs' claims. *Id.* While the Court recognizes the difficulty of establishing the criticality of documents which a party has not viewed, this conclusory statement cannot, on its own, satisfy Plaintiffs' burden as defined in *Smith* and *Chavez*.

Under the *Smith/Chavez* framework, the difficulty of establishing criticality sight unseen is mitigated by the court's *in camera* review. "It is the trial judge who will be entrusted with balancing the need to ensure the confidentiality of peer review against the need of litigants to discover evidence essential to the merits of their case." *Smith*, 755 P.3d at 45. When performing this balancing test, it is important to remember that the purpose behind ROIA's confidentiality provision:

> is to encourage peer review, which includes the necessary ingredients of honesty and candor in the process of attempting to understand why mistakes occur in medical procedures, in order to improve the quality of care. Statements made may be those of medical personnel who were involved in

---

[2] Perhaps the formulation is something similar as that seen in residual hearsay rules. *See e.g.,* Fed. R. Evid. 807 (assuming other prerequisites, residual hearsay admissible if more probative than any other evidence which the proponent can procure through reasonable efforts).

> a particular incident. Those statements may shed light on whether a mistake was made and may constitute opinion on those matters. Statements may also be those of personnel who may be evaluating another's competence. There of course may be other data or information that reflect on the competence and skill of a particular physician.

*Chavez*, 189 P.3d at 720.

In the instant case, the Court finds that, for the majority of the documents presented for *in camera* review, the documents are not critical within the meaning of *Smith/Chavez* so as to justify disclosing these peer review documents.  Documents marked with bates numbers  TB00132, TB00164-TB00175, TB00183, TB00186-TB00187, TB00224 and TB00231 fall into this category.  All but one of these documents involve peer review of Dr. Byrne during his employment at the hospital.  Consequently, they strongly implicate the ROIA interests laid out above.  Moreover, with respect to all the documents in this category, the relevant information contained in these documents can be learned through other sources and other discovery processes.  Consequently, after reviewing these documents, the Court is unconvinced that the information contained therein is so essential to the merits of the Plaintiffs' case that the ROIA confidentiality interests are outweighed.

With respect to the remaining two documents (TB00128-TB00130, TB00196), the balancing of interests is different.  These documents are two letters written by Dr. Byrne to the hospital and credentialing committee explaining licensing issues in his past.  A number of factors convince the Court that the balance of interests shift in favor of disclosure of these documents.

First, the subject of these letters go directly to the issue of what the hospital knew when they hired and credentialed Dr. Byrne. Second, while they are not dated, their context indicates that they were written and sent before Dr. Byrne was hired by the hospital. As such, these letters were close in time to the alleged negligence. *See Chavez*, 189 P.3d at 721 (criticality of documents impacted by the timing of the alleged negligent act and the creation of the documents). Additionally, because of the fallibility of human memory, other sources of discovery, such as depositions, will likely not provide the same level of detail regarding what the hospital knew about Dr. Byrne back in the summer of 2006. Moreover, given that the letters were sent from Dr. Byrne to this hospital, it is unlikely that these letters exist anywhere else. For all these reasons, these letters are highly probative to the issue of whether the hospital was negligent in credentialing Dr. Byrne. Consequently, the success or failure of a [Plaintiffs'] cause of action or defense would likely turn on this evidence.

Moreover, unlike peer review documents produced by hospital or credential committee personnel, letters from a doctor seeking employment at a hospital do not strongly implicate the interests motivating ROIA. Disclosing such letters will not diminish "honesty and candor in the process of attempting to understand why mistakes occur in medical procedures." *Id.* at 720. Dr. Byrne was not writing these letters as part of the review of any specific mistake, but rather to convince a potential employer of his qualifications. As such, his expectation of confidentiality and the public policy interest in

8

keeping these letters confidential are relatively low.  After "balancing the need to ensure the confidentiality of peer review against the need of litigants to discover evidence essential to the merits of their case," the Court finds that these documents (TB00128-TB00130, TB00196) should be disclosed even if the Defendant had met its burden of proving that they were generated exclusively for peer review and no other purpose. *Smith*, 755 P.3d at 45.

**IT IS ORDERED** that, after *in camera* review, the Court will not compel Defendant Mimbres Memorial Hospital to produce the credentialing documents marked TB00132, TB00164-TB00175, TB00183, TB00186-TB00187, TB00224 and TB00231.  The Court will compel Defendant Mimbres Memorial Hospital to produce the credentialing documents marked TB00128-TB00130, TB00196.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.

9